## DAY et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 9, 1898.)

No. 981.

**1. CONTRACTS—BREACH—RIGHT OF PROMISEE TO COMPLETE.**

Where a contract to furnish horses for the United States cavalry is not completed, and the contract gives the government the right to complete it at the contractor's expense, if sufficient suitable horses cannot be obtained at the stipulated place of performance the government may purchase wherever it can secure the best terms.

**2. EVIDENCE—COMPETENCY OF WITNESS—PURPOSE OF OBTAINING INFORMATION.**

Upon an issue as to how many horses arriving at a certain place during a specified time satisfied the requirements of a contract, it was error to reject the testimony of a witness who examined such horses with sufficient care to know whether they complied with the requirements, on the ground that his examination was not made with a view of ascertaining whether such requirements were satisfied.

**3. SAME.**

The test of the competency of a witness is the extent of his knowledge, not the purpose with which he acquired it.

In Error to the District Court of the United States for the Eastern District of Missouri.

J. D. Johnson, for plaintiffs in error.

Walter D. Coles, for the United States.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. John J. Day, Thomas T. Rubey, and Charles G. Knox, the plaintiffs in error, sued out this writ of error, to reverse a judgment against them on a bond which they gave to the United States, on September 12, 1895, conditioned for the faithful performance by Day of a contract he had made with the government to furnish it 78 cavalry horses, possessing the qualifications named in certain specifications, at the city of St. Louis, in the state of Missouri, on or before November 9, 1895. He failed to furnish a sufficient number of the specified horses, and the contract provided that, in case of his failure to perform it, the United States might supply the deficiency by purchase in open market or otherwise, and that the contractor should be charged with any loss which the government sustained by his failure. Pursuant to this provision of the contract, the government purchased in the state of Kentucky and in the city of Chicago 76 horses to supply the deficiency caused by the failure of the contractor, and charged him with the excess of their cost above the contract price, which was $3,063.50. The United States then sued the plaintiffs in error on their bond to recover this amount, and set forth in their petition the facts we have stated. The plaintiffs in error answered that the contractor, Day, had tendered to the government horses of the character described in the contract, but that the United States had refused to accept them, and denied that they had been compelled to expend $3,063.50 above the contract price in order to obtain the horses which he had agreed to furnish.

It is insisted that it was error for the court below to permit the government to prove at the trial the prices which it paid for the horses it purchased in Kentucky and in Chicago, because the contract was to be performed in St. Louis; and it is contended that the measure of damages was the difference between the contract price and the market value of the horses in that city. There was no error in this ruling, however, because the United States produced evidence tending to prove that the requisite number of cavalry horses of the character called for by the contract could not be procured within a reasonable time in the city of St. Louis or in its vicinity, and the contract expressly provided that, upon the default of the contractor, the government might purchase them in open market or otherwise, and charge the loss to the contractor. Under this agreement, the officers of the United States had the right to go to the place or places where they could obtain the number and character of horses required at the lowest prices. They had the right to buy the horses there, and to charge the expense of their purchase and of their transportation to St. Louis to the contractor, by the express terms of the contract.

In order to rebut the testimony to the effect that these horses could not be found within a reasonable time in the city of St. Louis, and for the purpose of proving that they might have been obtained in that city at lower prices than those paid for them in Kentucky and in Chicago, and for the purpose of diminishing the damages, the plaintiffs in error produced a witness who testified that he had been deputy sheriff of the National Stock Yards in St. Louis for about 2 years; that for 35 years prior to that time he had been engaged in buying and selling horses; that he was present at the inspection of horses tendered to the government by Day; that he knew about the number of horses that arrived daily at the stock yards at St. Louis; that he was in a position where he saw most of them come in; that he closely inspected daily all the horses that came into these stock yards, except perhaps one or two loads that came in early before he arrived; and that about 2,000 horses arrived there each week. Thereupon the following questions were propounded to him by counsel for plaintiffs in error:

"Did you observe them closely enough to be able to state what number of those received possessed the qualifications set forth in these specifications [the specifications describing the horses required under the contract] in the fall of 1895?" "Are you able to state from the observation you made of them about how many of them were up to the requirements of the specifications?" "I will get you to state how many horses you observed that did possess the qualifications mentioned in these specifications that arrived in the stock yards weekly during the fall of 1895."

No objections were interposed to any of these questions; but, after the witness had said that he did not examine all the horses for the purpose of determining whether they came up to the specifications, the trial court refused to permit him to answer any of these questions, unless he based his answer upon an examination made with a view of ascertaining whether or not the horses filled the requirements of the specifications; and, as he had never made any examination of them for that express purpose, he was not allowed to answer

the questions. The effect of this ruling was to restrict the number of possible witnesses relative to the number and value of cavalry horses in St. Louis in the fall of 1895 to those who had examined the horses arriving there for the express purpose of determining whether or not they complied with the government specifications for cavalry horses, and it is not probable that any one who was not interested in filling Day's contract ever made any examination for that express purpose. In other words, the ruling of the court made the purpose of the examination, and not the knowledge obtained by that examination, the test of the competency of the witness. But the measure of the competency of a witness is not the view or purpose with which he obtained his information, but the extent and character of the knowledge which he obtained. The question is not why he obtained his knowledge, but what amount of knowledge he acquired. And the question here was not why this witness examined the horses and knew whether or not they complied with the specifications, but it was whether or not he had so examined them that he did know. The court refused to let him tell whether or not he had made such an examination that he had acquired this knowledge. It refused to permit him to answer this question even with a simple "Yes" or "No." Yet if he had made the requisite examination, and had acquired the knowledge, he was equally competent to testify, whether he had obtained this knowledge with a view of purchasing the horses, or for the purpose of raising or selling them in the open market, or for the express purpose of determining whether they filled the specifications of this government contract. The court not only refused to let him answer the question we have been considering, but it declined to let this witness testify how many horses he observed that did possess the qualifications mentioned in the specifications. If he observed any so closely that he knew that they possessed these qualifications, the plaintiffs in error were undoubtedly entitled to prove that fact; and, if he did not so observe them, they were entitled to an answer to their question to that effect. No tenable objection to these questions and their proper answers seems to us to exist, and the judgment below must be reversed, and the cause must be remanded to the circuit court, with directions to grant a new trial. It is so ordered.